UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDALL S. CAIN,

                Plaintiff,                CIVIL ACTION NO. 08-14699

       v.                        DISTRICT JUDGE GERALD E. ROSEN

PATRICIA CARUSO, JUDY           MAGISTRATE JUDGE VIRGINIA M. MORGAN
K. LABERDEE, LENNIE M.
ALCORN, JOSEPH GONZALES,
LARRY D. PATTON, KEITH
HICKMON, and MARGARET
TURSAK,

                Defendants.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

      This is a 42 U.S.C. § 1983 action in which the plaintiff alleges that defendants violated his constitutional rights.  The matter comes before the court on defendant Tursak's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and, in the alternative, Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 (D/E #9).  For the reasons discussed below, this court recommends that defendant Tursak's motion be **GRANTED** on the basis that she is not a state actor subject to suit under § 1983.

### II. Background

**A. Complaint**

On November 5, 2008, plaintiff filed the complaint against defendants in this matter (D/E #1).  In that complaint, plaintiff alleges that he was a paroled prisoner in Monroe County under the control and supervision of the Michigan Department of Corrections (MDOC) in November 2005 and later (Complaint, ¶ 2) while defendant Margaret Tursak worked on MDOC matters for the Monroe County Salvation Army Harbor Light (SAHL) facility as a "recipient rights" staffer. (Complaint, ¶ 4).  Tursak was sued in both her individual and official capacities.  (Complaint, ¶ 4).

According to the complaint, plaintiff was placed on parole by MDOC in Monroe County in November 2005 and, as a condition of parole, plaintiff was required to undergo substance abuse treatment.  He was sent by MDOC to the Monroe County SAHL facility.  (Complaint, ¶¶ 5-6).  Plaintiff also alleges that the conditions of parole was supervised by defendants Alcorn, Laberdee and Gonzales, and that, because those defendants knew that an inherent part of the Salvation Army's program was religion, they knowingly subjected plaintiff to an unconstitutional condition and violated plaintiff's First Amendment rights.  (Complaint, ¶ 6).

Plaintiff further alleges that, while on parole, plaintiff was charged with retail fraud in 2005 and, after pleading guilty, he was sentenced to six months in the Monroe County Jail. (Complaint, ¶ 7)  According to plaintiff, he signed an acknowledgment and a waiver on his notice of parole violation at the time of his sentence, but the MDOC did nothing until he was discharged from the County Jail.  (Complaint, ¶ 7)  Plaintiff claims that, after his discharge, the MDOC picked him up and told him that he was going to be required to do thirty (30) days of substance abuse treatment at the SAHL center in Monroe, Michigan.  (Complaint, ¶ 7)

Plaintiff alleges that he has firmly held religious views of a Christian/fundamentalist nature and that, during a previous stay at the SAHL center in 2000, he told defendant Tursak that he objected to the religious nature of the Salvation Army program. (Complaint, ¶ 8)

According to plaintiff, on November 3, 2005, the day after he was taken to SAHL, he wrote a complaint by hand about his religious objections. (Complaint, ¶ 9) Plaintiff also claims that he filed a formal complaint on November 4, 2005 and that he received a response asking what he wanted them to do on November 7, 2005. (Complaint, ¶ 9) Plaintiff then wrote back that he did not wish to be subjected to any religious program. (Complaint, ¶ 9) According to the complaint, Cain got a letter published in the local newspaper on November 25, 2005, and that letter complained about the compulsory religious program to which he was being subjected. (Complaint, ¶ 10) Plaintiff also alleges that, on November 29, 2005, he was given a memo by defendant Tursak in which he was offered a secular treatment program, but not told what it was or where it was. (Complaint, ¶ 11)

Plaintiff claims that, on November 30, 2005, an official resolution of grievance was presented to him which indicated that he had been offered a secular program, but had been unable to get through in attempts to contact them. (Complaint, ¶ 12) Plaintiff also claims that the official response to the grievance also indicated that he had been offered placement at CPI (Community Programs, Inc.) in Waterford, Michigan, a 120 mile round trip from his home and where he would have to start what was originally only going to be a 30 day treatment program to begin with (extended to 90) all over again. (Complaint, ¶ 12)

According to plaintiff, he then indicated that he would stay at SAHL under protest and utilize his 15-day appeal period from the resolution of the grievance, but SAHL responded that

he did not want to be there, he could not stay there, that he had one hour to make a decision or else he would be terminated and sent back to the county jail.  (Complaint, ¶ 13)  Plaintiff claims that he was then terminated without any opportunity to respond and was sent to the county jail. (Complaint, ¶ 13)

Plaintiff alleges that, on December 2, 2005, his Probation Officer, defendant Alcorn, issued him a violation notice for not completing the SAHL program and that plaintiff demanded a preliminary hearing in response.  (Complaint, ¶ 15)  According to plaintiff, the preliminary hearing was held on December 8, 2005 and, at that hearing, defendant Tursak falsely claimed that the reason that plaintiff was terminated from SAHL was that he was not making progress, he made complaints and demands, did not complete his work and he was instigating others. (Complaint, ¶ 16)  Plaintiff also alleges that the hearing officer, defendant Patton, was not neutral and he found probable cause for the parole violation.  (Complaint, ¶ 17)

According to plaintiff's complaint, on December 13, 2005, defendant Alcorn gave plaintiff a contract for commercial placement at another Salvation Army facility (known as PRC) and, according to the commercial placement contract, plaintiff was free to leave and go to work, returning by 10:00 p.m.  (Complaint, ¶ 18)  Plaintiff claims that, when he got to PRC, he was told by the Salvation Army representatives that he was a prisoner and that he would only be allowed out 4-hours a day to look for work or for other narrowly specified activities. (Complaint, ¶ 18)  Plaintiff also claims that, when he reported to defendant Alcorn for his regular Wednesday meeting on December 14, 2005, plaintiff complained about the change from the contract that he had signed the day before and was told by defendant Alcorn that he should forget about it.  (Complaint, ¶ 19)  Plaintiff also states that he also complained about not having

-4-

a formal parole violation hearing and was told that the Area Manager, defendant Gonzales, had put him in diversion.  (Complaint, ¶ 19)

In his complaint, plaintiff alleges that all of the defendants, with the exception of defendant Caruso, acted in concert with each other to retaliate against plaintiff for the exercise of his First Amendment rights and to deprive him of his liberty without due process of law. (Complaint, ¶ 30)

### B. Motion Before the Court

On February 4, 2009, defendant Tursak filed the instant motion for dismissal and/or summary judgment (D/E #9).  Tursak argues that plaintiff's §1983 claim against her alleging a violation of the First and Fourteenth Amendments must be dismissed as a matter of law because she was not a state actor.  Tursak also argues that, even if she is deemed to be a state actor, she would be entitled to qualified immunity.  Tursak further argues that there was no constitutional violation in this case.

On February 23, 2009, plaintiff filed a response to Tursak's motion (D/E #11).  In that response, plaintiff argues that it is apparent under well-recognized case law that the Salvation Army and its employees, such as plaintiff, act under color of law when they deliver faith-based rehabilitation programs for State or local government.  Plaintiff also argues that, as a private person Tursak cannot claim qualified immunity at all.  Plaintiff further argues that, even if Tursak can claim qualified immunity, the law was clearly established in this case.

On March 2, 2009, Tursak filed a reply to plaintiff's response (D/E #14).  In that reply, Tursak reiterates her earlier arguments while addressing the cases cited by plaintiff.

### III. Standard of Review

Defendant Tursak moves for summary judgment pursuant to Fed. R. Civ. Pro. 56(b). That rule states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1348

(quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).[1]

## IV. Discussion

### A. State Actor

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (citations omitted). One acts under color of state law when one exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941). If a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, then the defendant is considered to be acting under color of state law. West, 487 U.S. at 49; Lugar v. Edmondson Oil Co., 457 U.S. 922, 928, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Therefore, the court must determine whether defendant Tursak performed a state action.

Defendant Tursak is not a government employee or official. She is a private party. In certain circumstances, however, the actions of even private parties may be deemed to be state

---

[1]Defendant Tursak also moves for dismissal of plaintiff's claims against her pursuant to Fed. R. Civ. P. 12(b)(6), but she relies on outside evidence when doing so and, in deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court may only "consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." Bassett v. National Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008). Therefore, this court will only consider defendant's argument for summary judgment.

action "when the conduct causing the deprivation of a federal right may be fairly attributable to the state." Revis v. Meldrum, 489 F.3d 273, 289 (6th Cir. 2007) (quoting Lugar v. Edmundson Oil Co., 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)). This determination involves a two-part inquiry. "First, the deprivation in question must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." Revis, 489 F.3d at 289 (quoting Lugar, 457 U.S. at 937). And second, "the party charged with the deprivation must be a person who may fairly be said to be a state actor." Revis, 489 F.3d at 289 (quoting Lugar, 457 U.S. at 937).

For a private actor-defendant's acts to be considered state action, the "actions [must] so approximate state action that they may be fairly attributed to the state." Lansing v. City of Memphis, 202 F.3d 821, 828 (6th Cir. 2000). The United States Court of Appeals for the Sixth Circuit uses three tests to determine if a private actor-defendant's conduct amounts to state action. These are commonly referred to as: 1) the public-function test; 2) the state-compulsion test; and 3) the symbiotic relationship or nexus test. Boykin v. Van Buren Twp., 479 F.3d 444,452 (6th Cir. 2007) (quoting Chapman v. Higbee Co., 319 F.3d 825, 833 (6th Cir. 2003)); Lansing, 202 F.3d at 828. Each of these tests must be examined to determine if Tursak's acts constitute state action.

### 1. Public-function Test

Under the  public-function test, "a private party is deemed a state actor if he or she exercised powers traditionally reserved exclusively to the state." Chapman, 319 F.3d at 833. This test has typically been interpreted very narrowly, and has been utilized to find state action on the part of a private actor only in rare circumstances. Chapman, 319 F.3d at 833-34. The few

examples of state action under this public-function test illustrate its lack of expansive utilization by the courts.  See, *e.g.*, Flagg Bros. v. Brooks, 436 U.S. 149, 157-58, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) (holding elections is public function); Jackson v. Metropolitan Edison Co., 419 U.S. 345, 352-53, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (eminent domain is public function); Marsh v. Alabama, 326 U.S. 501, 505-09, 66 S.Ct. 276, 90 L.Ed. 265 (1946) (company-owned town is public function).

Importantly, when a court addresses the issue of state action under the public-function test, it must conduct a historical analysis of the activity in question to determine whether the activity truly is one that has been traditionally and exclusively performed by the state.  Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003); Ellison v. Garbarino, 48 F.3d 192, 196 (6th Cir. 1995) ("Courts that have addressed this issue [public-function test] have typically required some historical analysis to determine whether an action is one traditionally the exclusive prerogative of the state.").  The Sixth Circuit has also made it clear that the burden is on the plaintiff to make this showing of historical evidence or argumentation to the court deciding the issue of state action.  Straub v. Kilgore, 100 Fed. Appx. 379, 385 (6th Cir. 2004) (quoting Wittstock, 330 F.3d at 902); Wittstock, 330 F.3d at 902; Ellison, 48 F.3d at 196.

In this case, plaintiff has not made any argument suggesting that Tursak's actions were ones traditionally and exclusively performed by the state and there is no showing of historical evidence with respect to the public-function test.  Therefore, this court finds that Tursak should not be considered a state actor under the public-function test.

### 2. State-compulsion Test

The state-compulsion test "requires that the state 'exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state.'"  Wilcher v. City of Akron, 498 F.3d 516, 519 (6th Cir. 2007) (quoting Wolotsky, 960 F.2d at 1335).  For the activities of the private actor to constitute state action under this test, more is required than merely the approval or acquiescence of the state in the decisions or actions of the private actor.  See Blum v. Yaretsky, 4557 U.S. 991, 1004 (1982).  Here, plaintiff has neither argued nor alleged that Tursak was coerced or encouraged by the state into committing any of the alleged acts against plaintiff.  This court therefore finds that the state-compulsion test for state action is not satisfied in this case.

### 3. Symbiotic Relationship or Nexus Test

The third of the state-actions tests is the symbiotic relationship or nexus test.  Under this test, "the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter maybe fairly treated as that of the state itself."  Wolotsky, 960 F.2d 1331, 1335 (6th Cir. 1992). Determinations of state action under the nexus test necessarily depend on the unique facts and circumstances presented by each individual case.  "The cases establish no clear standard for identifying a 'sufficiently close nexus.'"  Lansing v. City of Memphis, 202 F.3d 821, 830 (6th Cir. 2000); see also Lugar v. Edmundson Oil Co., 457 U.S. 922, 939, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (state-action determination is a "necessarily fact-bound inquiry").  However, the Supreme Court and the Sixth Circuit have provided some guidance to the inquiry.  Certain factors have been deemed insufficient, in and of themselves, to establish the required nexus

-10-

between the private actor's complained-of conduct and the State.  Extensive state regulation of a

private entity's operations does not establish state action via the nexus test.  See, *e.g.*,

Rendell-Baker v. Kohn, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); Adams v.

Vandemark, 855 F.2d 312 (6th Cir. 1988); Crowder v. Conlan, 740 F.2d 447 (6th Cir. 1984).

Public funding of nearly all of the private actor's activities, as well as the private actor's use of

public property, are similarly insufficient to establish the required nexus.  See, *e.g.*, Blum v.

Yaretsky, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982); Wolotsky, 960 F.2d at 1336;

Crowder, 740 F.2d at 450, 453.  The minority presence of public officials on the private actor's

decision-making board also does not satisfy the nexus test for state action.  See, *e.g.*, Jackson v.

Metropolitan Edison Co., 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); Lansing, 202 F.3d

at 831; Crowder, 740 F.2d at 447.  Also, the utilization of public services by private actors does

not by itself establish the requisite nexus for state action.  See, *e.g.*, Am. Mfrs. Mut. Ins. Co. v.

Sullivan, 526 U.S. 40, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999); Ellison v. Garbarino, 48 F.3d 192

(6th Cir. 1995).  Furthermore, the mere existence of a contract between a governmental agency

and a private party is insufficient to create state action.  See, *e.g*, Revis v. Meldrum, 489 F.3d

273, 292 (6th Cir. 2007); McCarthy v. Middle Tennessee Elec. Membership Corp., 466 F.3d

399, 412 (6th Cir. 2006); Simescu v. Emmet County Dept. of Soc. Services, 942 F.2d 372, 375

(6th Cir.1991).

Importantly, it should also be remembered that for this state-action test to be satisfied, the

required nexus must be found between the specific complained-of actions of the private actor

and the involvement or influence of the State.  See Wolotsky, 960 F.2d at 1335 ("[I]t must be

demonstrated that the state is intimately involved in the challenged private conduct in order for

-11-

that conduct to be attributed to the state for purposes of section 1983."); see also Straub v.

Kilgore, 100 Fed. Appx. 379, 385 (6th Cir. 2004) ("In order to show state action, the state must

be 'intimately involved' with the challenged conduct."); Crowder, 740 F.2d at 453 (explaining

that plaintiff must demonstrate nexus between the specific challenged action and the

governmental involvement alleged to provide the basis for a finding of state action).

   In this case, Tursak provided two affidavits related to SAHL.  In the affidavit of Don

McRae, who is the Director of Compliance, Development and Quality Assurance of the SAHL's

facilities, McRae stated that SAHL is a privately owned, non-profit, charitable organization that

provides substance abuse treatment to individuals.  (Affidavit of Don McRae, ¶¶ 1-2; attached as

Exhibit B to Defendants' Motion)  McRae also stated that SAHL provides a service to the state

of Michigan pursuant to a contract between the Salvation Army and MDOC in which "parolees

voluntarily agree to participate in substance abuse treatment as a condition of parole, in lieu of

serving a jail sentence or another form of sanction.  (Affidavit of Don McRae, ¶ 3; attached as

Exhibit B to Defendants' Motion)  McRae further stated that the SAHL is open to private

individuals, it does not seek out parolees, and that the MDOC is not involved in the daily

activities that occur at the program, the counseling of parolees, or the personnel decisions at the

program  (Affidavit of Don McRae, ¶¶ 7-10; attached as Exhibit B to Defendants' Motion)

According to McRae, the MDOC does pay for any state-mandated drug testing or off-site

medical treatment and that, while the SAHL does not make any decisions regarding parole

violations due to noncompliance, it does report that type of information to the MDOC.

(Affidavit of Don McRae, ¶¶ 11-12; attached as Exhibit B to Defendants' Motion)  With respect

to herself, Tursak's affidavit provides that she, during the course of her employment at SAHL,

-12-

she previously held the position of "Recipient Rights Advisor" and that part of her responsibilities in that position involved taking complaints from enrollees in the program and submitting them to the MDOC if appropriate.  (Affidavit of Majorie Tursak, ¶ 3; attached as Exhibit C to Defendants' Motion for Summary Judgment)  Tursak also stated that the MDOC does not participate in the substance abuse treatment at SAHL.  (Affidavit of Majorie Tursak, ¶ 4; attached as Exhibit C to Defendants' Motion for Summary Judgment)  Tursak further stated that, on or about November 25, 2009, Tursak verbally communicated to plaintiff an MDOC decision that it had found another treatment program for him that did not involve AA meetings as well as the options given to plaintiff by the MDOC.  (Affidavit of Majorie Tursak, ¶ 7; attached as Exhibit C to Defendants' Motion for Summary Judgment)

Plaintiff did not file any evidence in response to Tursak's motion.  Nor did plaintiff file an affidavit requesting additional discovery pursuant to Fed. R. Civ. P. 56(f).[2]

Under the guidance and precedent of the Sixth Circuit Court of Appeals relating to this particular state-action test, this court finds that plaintiff has fail to establish a sufficient nexus between the alleged acts of Tursak and the involvement of the state of Michigan to consider Tursak's actions to be state action.  Although the evidence might be sufficient to show that SAHL had a contract with the government and was subject to some regulation, these factors in

---

[2]Fed. R. Civ. P. 56(f) provides: "If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order."   An affidavit required by Rule 56(f) to support a request for additional discovery must indicate the need for discovery, what material facts may be uncovered, and why the information has not been previously discovered.  Egerer v. Woodland Realty, Inc., 556 F.3d 415, 426 (6th Cir. 2009) (citing Cacevic v. City of Hazel Park, 226 F.3d 483, 488 (6th Cir. 2000).

-13-

and of themselves to not create a symbiotic relationship.  Most importantly, there is nothing to

indicate that the state had any influence or role in the specific actions Tursak took, *i.e.* passing

along a memorandum from the MDOC and testifying at plaintiff's preliminary hearing.

Moreover, with respect to Tursak's testimony, the Sixth Circuit has expressly held that offering

witness testimony at a criminal trial does not expose a private individual to liability for actions

taken "under color of law."  Moldowan v. City of Warren,  2009 WL 1872284, 36 (6th Cir.

2009).[3]

    In his response, plaintiff relies heavily on Hanas v. Inner City Christian Outreach, Inc.,

542 F.Supp.2d 683 (E.D. Mich. 2008) (Tarnow, J.).  In that case, after pleading guilty to

possession with intent to deliver marijuana, Hanas had to choose between going to prison or

entering a faith-based rehabilitation program run by Inner City Christian Outreach (ICCO) in

Flint, Michigan.  Hanas, 542 F.Supp.2d at 688.  Hanas opted for the residential placement and, at

ICCO, Pastor Dwight Rottiers and other Inner City staff prevented Hanas from practicing

Catholicism and forced him to participate in worship services and Bible studies grounded in the

_____

    [3]This court would note that the United States Supreme Court has noted that it is
conceivable that nongovernmental witnesses could act "under color of law" by conspiring with
the prosecutor or other state officials, Briscoe v. LaHue,  460 U.S. 325, 329 n. 7, 103 S.Ct. 1108
(1983) (citations omitted) and that plaintiff alleged that Tursak gave false testimony as part of a
conspiracy with the defendants, who include state actors.  See also Memphis, Tennessee Area
Local, American Postal Workers Union, AFL-CIO v. City of Memphis, 361 F.3d 898, 905 (6th
Cir. 2004) ("Application of these tests to the conduct of a private entity, however, is relevant
only in cases in which there are no allegations of cooperation or concerted action between state
and private actors." (citing Cooper v. Parrish, 203 F.3d 937, 952 n. 2 (6th Cir. 2000)); United
States v. Price, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966) (stating that to act under
color of law does not require that the accused be an officer of the State.  It is enough that he is a
willful participant in joint activity with the State or its agents.).  Nevertheless, the Supreme
Court has also held that private witnesses have absolute immunity with respect to § 1983 actions,
Briscoe, 460 U.S. at 334, so Tursak would not be liable for her testimony even if she is deemed
to be a state actor.

-14-

Pentecostal tradition.  Hanas, 542 F.Supp.2d at 688.  In determining that Rottiers and ICCO

acted under the color of law and could be liable under 42 U.S.C. § 1983, Judge Tarnow found:

> Rottiers and Inner City Christian Outreach received the court's endorsement of
> their authority.  For instance, Judge Ransom and Amy admonished Hanas to
> follow the rules of Pastor Rottiers's program.  As Amy said, "the rules of Pastor
> Rottiers'[s] program are the rules of the Court."  Rottiers and Inner City Christian
> Outreach acted jointly with the Drug Court.  See Adickes v. S.H. Kress & Co.,
> 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 ("To act 'under color' of law
> does not require that the accused be an officer of the State. It is enough that he is
> a willful participant in joint activity with the State or its agents.").  Alternatively,
> there was a symbiotic relationship between Rottiers, ICCO, and the Drug Court,
> as the Drug Court provided Inner City Christian Outreach with a source of
> referrals, while ICCO served the Drug Court's need for a no-cost residential
> program.  See Burton v. Wilmington Parking Authority, 365 U.S. 715, 724, 81
> S.Ct. 856, 6 L.Ed.2d 45 (1961). [Hanas, 542 F.Supp.2d at 693-694 (citation to the
> record omitted)]

Unlike in Hanas however, the plaintiff in this case offers nothing more than his assertion that

Tursak and state officials engaged in joint activity.  Beyond that unsupported allegation, the

evidence merely shows that SAHL had a contract with the MDOC and that Tursak dealt with the

MDOC as part of her job.  Neither of which is enough for a rational trier of fact to find for

plaintiff.

## B. Qualified Immunity

If Tursak is deemed to be a state actor, then she argues that she should be entitled to

qualified immunity.  Qualified immunity is "an entitlement not to stand trial or face the other

burdens of litigation."  Saucier v. Katz, 533 U.S. 194, 200; 121 S.Ct. 2151; 150 L.Ed.2d 272

(2001) overruled in part by Pearson v. Callahan, --- U.S. ----, 129 S.Ct. 808, 172 L.Ed.2d 565

(2009), (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411

(1985)).  The privilege is an immunity from suit and not a mere defense to liability.  Saucier, 533

U.S. at 200.  As a result, courts have "repeatedly have stressed the importance of resolving

immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

"A court should not grant summary judgment on the issue of qualified immunity if there exists a genuine issue of material fact, 'involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights.'" Flint ex rel. Flint v. Kentucky Dept. of Corrections, 270 F.3d 340, 346-347 (6th Cir. 2001) quoting Poe v. Haydon, 853 F.2d 418, 425-426 (6th Cir. 1988). A court required to rule upon the qualified immunity issue must consider whether the facts alleged show the officer's conduct violated a constitutional right and whether that constitutional right was clearly established. Saucier, 533 U.S. at 201. In making those inquiries, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 129 S.Ct. at 818. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable." Saucier, 533 U.S. at 201.

Being subject to suit under § 1983, however, does not mean that a party has the right to assert qualified immunity. Harrison v. Ash, 539 F.3d 510, 521 (6th Cir. 2008). Although § 1983 "creates a species of tort liability that on its face admits of no immunities," Wyatt v. Cole, 504 U.S. 158, 163, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992), the Supreme Court has carved out areas of immunity from suit where the "tradition of immunity was so firmly rooted in the common law and was supported by such strong policy reasons that 'Congress would have specifically so

-16-

provided had it wished to abolish the doctrine.'" Wyatt, 504 U.S. at 164 (citations omitted).  In Richardson v. McKnight, 521 U.S. 399, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997), for example, the Supreme Court examined historical precedent and the policy considerations undergirding the doctrine of qualified immunity to find that qualified immunity was not available to prison guards who worked for a private, for profit corporation that was under contract with the state to manage a prison.  Thus, this court must engage in a context specific analysis, examining the common law tradition of immunity as well as the policy considerations supporting qualified immunity, to determine whether Tursak would be eligible to assert qualified immunity in a § 1983 action.  See Richardson, 521 U.S. at 408-09; Wyatt, 504 U.S. at 168-69.

In this case, Tursak offers no argument why she should be entitled to qualified immunity and she appears to have abandoned this argument in her reply brief (D/E #14, pp. 4-5).  Consequently, the court would be justified in considering the argument waived.  See Spirko v. Mitchell, 368 F.3d 603, 612 (6th Cir. 2004) (holding that the failure to develop an argument constitutes a waiver).

To the extent the court does consider Tursak's request for qualified immunity, her request must be denied.  In Richardson, the Court examined the common law prior to the enactment of § 1983 to find that there was no "firmly rooted" history of providing immunity for private parties who operated prisons or other punitive establishments while also observing that "the law did provide a kind of immunity for certain private defendants, such as doctors or lawyers who performed services at the behest of the sovereign." Richardson, 521 U.S. at 407.  Defendant Tursak does not point to any firmly rooted history of providing immunity to drug treatment centers and the case law does not reveal any such history.

-17-

Nor do the policy rationales undergirding qualified immunity counsel in favor of extending immunity to defendant Tursak.  As the Supreme Court noted in Wyatt v. Cole, the doctrine of qualified immunity "strikes a balance between compensating those who have been injured by official conduct and protecting government's ability to perform traditional functions." Wyatt, 504 U.S. at 167, 112 S.Ct. 1827.  In Richardson, the Supreme Court stated that the policy rationales for extending qualified immunity include "protecting the public from unwarranted timidity on the part of public officials" and "encouraging the vigorous exercise of official authority." 521 U.S. at 408. Additionally, the Court noted that qualified immunity is intended to prevent lawsuits from distracting officials from adequately carrying out their duties and "ensur[ing] that talented candidates [are] not deterred from entering public service."  Richardson, 521 U.S. at 408.

In this case, while SAHL is a non-profit, the policy reasons discussed in Richardson with respect to private prisons appear to apply it as well.  In considering the first of the policy rationales supporting qualified immunity in the context of private prisons, the Supreme Court in Richardson noted that "the most important special government immunity-producing concern-unwarranted timidity-is less likely present, or at least not special, when it is a private company subject to competitive market pressures.  Richardson, 521 U.S. at 409.  Additionally, the Supreme Court found that the private company would be able to insure that talented candidates are not deterred by the threat of damages even in the absence of qualified immunity because private firms may obtain comprehensive insurance and do not operate under "civil service law restraints" and were therefore better able to "offset increased employee liability risk with higher pay or extra benefits."  Richardson, 521 U.S. at 411.

-18-

Therefore, applying <u>Richardson</u> to this case, this court finds that the purposes of qualified immunity do not support the extension of the doctrine to staff employed by a private drug treatment center.

## C. Genuine Issue of Material Fact

Tursak also argues that, even if she is found to be a state actor, plaintiff's §1983 claim fails as a matter of law because the substance abuse program is not violative of Plaintiff's rights. In support of that assertion, Tursak points to her statement in her affidavit that:

> [SAH] does not require its enrollees to attend church as part of the substance abuse treatment program.  Instead, all enrollees are provided with the option of either attending a spiritual seminar, or alternatively, writing an essay on his/her own religious beliefs or spirituality.  Plaintiff was presented with this option, and at no time was he told he was required to attend a spiritual seminar. [Affidavit of Majorie Tursak, ¶ 6; attached as Exhibit C to Defendant's Motion]

Plaintiff did not address that argument in his response and the court could find that he has therefore failed to demonstrate that a genuine issue is in dispute.  Nevertheless, at this early stage of the litigation, this court cannot find as a matter of law that there has been no constitutional violation.  Such a finding would be premature.  SAHL has an AA program and other courts have found that, because of the religious focus of the AA/NA programs, forcing prisoners and parolees into such programs violates their clearly established constitutional rights.  <u>See</u> <u>Inouye v. Kemna</u>, 504 F.3d 705, 713 (9th Cir. 2007); <u>Warner v. Orange County Dept. of Probation</u>, 115 F.3d 1068 (2d Cir. 1997), aff'd, 173 F.3d 120 (2d Cir. 1999); <u>Orange County Dept. of Probation v. Warner</u>, 528 U.S. 1003 (1999); <u>Kerr v. Farrey</u>, 95 F.3d 472 (7th Cir. 1996).  In <u>Inouye</u>, the court found that the pertinent Establishment Clause law forbidding coerced participation in AA

was clearly established by "[t]he vastly overwhelming weight of authority." 504 F.3d at 714-15 (collecting cases).[4]

Moreover, as noted in some of the above cases, the cases relied upon by plaintiff for this issue are not persuasive.  O'Connor v. California, 855 F.Supp. 303 (C.D. Cal.1994), a challenge to AA/NA imposed as part of a sentence for drunk driving, acknowledged that the program was "founded on monotheistic principles" but explained that it was "[s]ignificant to this Court's decision that the individual has a choice over what program to attend." Id. at 307-08 (emphasis in original) and, therefore O'Connor does not speak to the coercion issue.  The holding of Boyd v. Coughlin, 914 F.Supp. 828 (N.D. N.Y. 1996), which did uphold a coerced program, was subsequently abrogated by the Second Circuit.  See Warner v. Orange County Dept. of Probation, 115 F.3d 1068, 1074-1075 (2d. Cir. 1997).  In Feasel v. Willis, 904 F.Supp. 582, 583 (N.D. Tex. 1995), the court only decided whether or not the law was clearly established, and not whether there had been a constitutional violation at all.

In light of the above case law and the minimal amount of evidence regarding SAHL's program, this court cannot say, as a matter of law, that no rational trier of fact could find for plaintiff.  Therefore, defendant Tursak's argument that she is entitled to summary judgment because there was no constitutional violation should be rejected.

## V. Conclusion

---

[4]The basic test for Establishment Clause violations remains that articulated in Lemon v. Kurtzman, 403 U.S. 602, 613, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), which requires that government acts (1) not have a "secular legislative purpose," (2) not have a "principal or primary effect" which either "advances [or] inhibits religion," and (3) not foster "an excessive government entanglement" with religion.  As the Seventh Circuit noted in Kerr v. Farrey, 95 F.3d 472 (7th Cir.1996), a government mandate to attend religious or religion-based events is clearly barred by the second prong of Lemon.  Kerr, 95 F.3d at 478-79.

-20-

For the reasons discussed above, the court recommends that defendant Tursak's motion be **GRANTED** on the basis that she is not a state action subject to suit under § 1983.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.


s/Virginia M. Morgan                                        
Virginia M. Morgan
United States Magistrate Judge

Dated:  July 23, 2009

## <u>PROOF OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on July 23, 2009.

<u>s/Jane Johnson</u>
Case Manager to
Magistrate Judge Virginia M. Morgan