**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

RANDALL S. CAIN,

        Plaintiff,

v.

PATRICIA CARUSO, Director of the Michigan Department of Corrections, in her official capacity, LENNIE M. ALCORN, JOSEPH J. GONZALES, LARRY D. PATTON, KEITH HICKMON, and JUDY K. LABERDEE, in their individual and official capacities, jointly and severally,

        Defendants.

_____ /

Case Number: 08-14699

GERALD E. ROSEN
UNITED STATES DISTRICT COURT

VIRGINIA M. MORGAN
UNITED STATES MAGISTRATE JUDGE

**REPORT AND RECOMMENDATION:
1) GRANTING DEFENDANTS' MOTION TO DISMISS (Doc. No. 38) AND 2) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS MOOT (Doc. No. 46)**

In this 42 U.S.C. § 1983 lawsuit, plaintiff, Randall S. Cain, a parolee under the supervision of the Michigan Department of Corrections, seeks to recover compensatory and punitive damages and injunctive relief for being forced to attend a religious-based substance abuse program as a condition of his parole. Presently before the court is Defendants' motion to dismiss pursuant Rule 12(b)(6) or, alternatively, summary judgment pursuant to Rule 56. (Doc. No. 38). Defendants also filed a second, supplemental motion for summary judgment pursuant to Rule 56. (Doc. No. 46). For the reasons stated below, the court recommend that the motion to dismiss (Doc. No. 38) be granted and the motion for summary judgment (Doc. No. 46) be denied as moot.

1

**I. Background**

Plaintiff was paroled from prison on May 16, 2001. (Doc. No. 38, Defs.' Mot. to Dismiss, Ex. D, Parole Violation Report 7/24/06). Initially, plaintiff was sentenced to a 24-month parole term; however, after failing to pay restitution, plaintiff's parole term was extended to March 28, 2010. *Id.* During his parole term, plaintiff committed multiple violations for drug use and other criminal conduct. *Id.*

On May 5, 2005, plaintiff's parole was transferred from Wayne County to Monroe County. *Id.* Defendant Lennie Alcorn was assigned as plaintiff's parole agent and Judy Laberdee was plaintiff's parole supervisor. *Id.* Three days after plaintiff's parole was transferred to Monroe, plaintiff stole a Home Medics massager from a Walgreens and was arrested for violating his parole. (Doc. No. 38, Defs.' Mot. to Dismiss, Ex. D, Parole Violation Report 5/18/05). Plaintiff also signed a substance abuse admission form in which he stated that he used cocaine. (Doc. No. 38, Defs.' Mot. to Dismiss, Ex. B, Substance Abuse Admission Form 5/11/05). After serving a 150 day jail-term, plaintiff was released into the custody of the MDOC and the MDOC then placed plaintiff in a 30-day, in-patient substance abuse treatment program hosted by Monroe County Salvation Army Harbor Light (SAHL). (Compl. ¶¶ 4, 7).

Shortly after arriving at SAHL, plaintiff began to complain that the Alcoholics Anonymous and other 12 step programs offered at SAHL were religious in nature and plaintiff felt that he was being indoctrinated against his own belief system by being forced to attend the 12 step programs. (Doc. No. 44, Pl.'s Resp. Ex. 1, Recipient Rights Investigation Report Client Randy Cain). Marjorie Tursak, the recipient rights advisor at SAHL, contacted the site manager at SAHL to see if plaintiff could forgo the 12 step program portions of the treatment program. *Id.* The site manager rejected

this alternative and suggested that plaintiff be placed in another program. *Id.* SAHL then contacted Tom Blackmon at the MDOC about finding plaintiff an alternative substance abuse program but Blackmon was unable to find a facility that did not mandate a 12 step program. *Id.* Plaintiff was then given the options of adapting to treatment at SAHL or meeting with his parole agent to be discharged from the program. *Id.* Plaintiff did not accept either option. *Id.*

On November 25, 2005, the local newspaper published a letter plaintiff wrote to the editor in which he complained that the MDOC forces parolees and probationers to attend religiously based substance abuse rehabilitation programs. (Doc. No. 44, Ex. 4, 11/25/05 Ltr. to the Editor). Plaintiff also expressed his belief that this practice violates the Constitution. *Id.*

Meanwhile, SAHL continued to help plaintiff find a secular placement for inpatient treatment, and on November 29, 2005, Tursak informed plaintiff that a secular placement had been found for him at Community Programs, Inc. *Id.* Plaintiff then had three options: 1) transfer to the new facility, where he may be required to begin treatment from the start; 2) remain at SAHL and accept the entire curriculum; or 3) be discharged and referred to the MDOC. *Id.*

On November 30, 2005, Plaintiff refused to be transferred to the secular in-patient rehabilitation program because it was in Waterford, Michigan, 60 miles from his home, and he would have to start the treatment program from the beginning. (Compl. ¶ 12). After rejecting the secular placement, plaintiff indicated that he would stay at SAHL and use his 15-day appeal period to appeal the resolution of his grievance. (Compl. ¶ 13).

Plaintiff was then discharged from SAHL and arrested for violating his parole by failing to complete the SAHL program. (Doc. 38, Defs.' Mot. to Dismiss, Ex. C, Preliminary Parole Violation Hearing Report of Findings, 12/8/05). During the parole violation hearing, Tursak testified that

plaintiff was discharged from SAHL for failing to make progress during treatment. *Id.* Tursak also reported that plaintiff was "instigating other clients to be defocused off of treatment and is harming others [sic] recovery efforts." *Id.* Plaintiff testified that he was not able to complete treatment because the environment at SAHL "went against his religious beliefs." *Id.* Plaintiff also stated that had he known he would be discharged unsuccessfully from SAHL he would have stayed in treatment regardless of his beliefs. *Id.* The hearing examiner, Larry Patton, Jr., concluded that probable cause had been established and stated: "Parolee Cain understood his conditions of parole and the importance of completing treatment accordingly. He chose not to comply." *Id.*

After the parole violation hearing, plaintiff resided in jail, where he was a constant problem, until December 13, 2005, when he was placed in a different Salvation Army facility, the Probation Residential Center ("PRC"). (Doc. No. 46, Defs.' MSJ, Ex. B, Offender Diary, p. 5). The PRC is not a treatment facility, rather it appears that it is a shelter of sorts, that imposes restrictions on its residents. (Compl. ¶ 18). Plaintiff was allowed to leave the PRC for four hours a day to work "or for other narrowly specified activities." (Compl. ¶ 18). Plaintiff did not receive drug treatment at the PRC but all the PRC residents are required to attend a church service conducted by the Salvation Army, which is followed by a special breakfast. (Compl. ¶ 20). Plaintiff attended the church service at first, but then complained and refused to go. (Compl. ¶ 20). Plaintiff was barred from the special breakfast as a consequence. (Compl. ¶ 20). Plaintiff received a "spirituality" violation from the Salvation Army and he was told that if he did not attend spirituality then he could have regular breakfast, but not the special breakfast. (Doc. No. 47, Pl.'s Resp., Ex. B, Misconduct Report).

Over the next few weeks, Plaintiff stayed at PRC and attempted to find work. (Doc. No. 46, Defs.' MSJ, Ex. B, Offender Diary, p. 2-5). Plaintiff continued to cause problems with the other

4

residents and also used his job hunting time to go out to lunch and tan. *Id.* at 3. On February 8, 2006, after Plaintiff tested positive for marijuana, Plaintiff was charged with another parole violation. *Id.* at 2. Plaintiff asked that the sample be preserved but it was not. (Compl. ¶ 24). Plaintiff's second drug test came back negative. (Compl. ¶ 24).

Plaintiff requested a hearing on the violation charge, and the hearing was held on February 13, 2006. (Doc. No. 46, Defs.' MSJ, Ex. B, Offender Diary, p. 2). Keith Hickmon presided over the hearing and found that probable cause existed. *Id.* Hickmon found that the discrepancy in two drug test outcomes was caused by the two different tests that were used and concluded that it was not unreasonable for the results to be different. (Compl. ¶ 25).

Thereafter, Plaintiff spent sixteen days in Monroe County Jail and was then transferred to the Ingham County Jail for a twenty-eight day stay. (Compl. ¶ 26). Plaintiff was released from Ingham County Jail on March 23, 2006, and he reported to another rehabilitation program called CPI, which is a secular rehabilitation program. (Doc. No. 46, Defs.' MSJ, Ex. B, Offender Diary, p. 2). On March 24, 2006, Plaintiff left the program without permission. *Id.*

Five days later, Plaintiff reported to Parole Agent Alcorn. (Compl. ¶ 28). Parole Agent Alcorn initiated another parole violation and Plaintiff was arrested again. (Compl. ¶ 28; Doc. No. 38, Defs.' Mot. to Dismiss, Ex. D, Parole Violation Report 3/29/06). In Alcorn's parole violation report, he writes: "During the time he [Plaintiff] was to be focusing on his drug addiction, he has been very busy making false accusations regarding SAHL, PRC and MDOC, taking his complaints to the local newspaper and having his letters to the Editor printed. He has attempted to sue SAHL, PRC and has filed grievences [sic] with MDOC. His focus is not on his behavior and has been a problem since his parole." *Id.* Plaintiff waived his preliminary parole violation hearing with respect

5

to this violation. *Id.* Plaintiff was returned to Ingham County Jail for nine days. (Compl. ¶ 28).

Plaintiff filed his complaint in this court, based on the above recited events, on November 5, 2008. (Doc. No. 1). In Plaintiff's complaint, he alleges that "he suffered a series of negative consequences due to his complaints, demanding his rights and sending letters to the newspaper." (Compl. 29). Plaintiff further alleges that the Defendants, except for Director Caruso, "acted in concert with each other to retaliate against Plaintiff CAIN for the exercise of his First Amendment rights and to deprive him of his liberty without due process of law (Fifth and Fourteenth Amendments), constituting a conspiracy to violate civil rights pursuant to 42 USC § 1983." (Compl. ¶ 30).

On October 29, 2009, Defendants filed the instant motion to dismiss. (Doc. No. 38). Plaintiff responded on January 7, 2010. (Doc. No. 44). On March 29, 2010, Defendants filed a motion for summary judgment. (Doc. No. 46). Plaintiff responded on April 16, 2010. (Doc. No. 47). This case is before the court for the resolution of all pretrial matters. (Doc. No. 17).

## II. Standards of Review

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 545 (2007). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1950 (2009) (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* In sum, "[t]o survive a motion

to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id*. at 1949 (internal quotation marks and citation omitted).

The standard of review for a motion for summary judgment is as follows:

> Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. "The judge is not to weigh the evidence and determine the truth of the matter, but rather determine whether there is a genuine issue for trial."

*Totes Isotoner Corp. v. Int'l Chemical Workers Union Council/UFCW Local 664C*, 532 F.3d 405, 411-12 (6th Cir. 2008) (internal citations omitted).

### III. Analysis

Defendants first argue that Plaintiff's claim for money damages against Parole Agent Alcorn should be dismissed because she is entitled to absolute immunity for her testimony during Plaintiff's parole hearings. (Doc. No. 38, Def.'s Mot. to Dismiss 5-6).

Plaintiff acknowledges that Parole Agent Alcon has testimonial immunity for testifying at Plaintiff's parole hearings but asserts that his claims against her "are based on her general role as Plaintiff's parole agent" and her knowledge that Plaintiff objected to the religious component of SAHL, Plaintiff had written letters to the newspaper complaining about the religious component of SAHL, and Plaintiff had tried to organize opposition to the religious component of SAHL. (Doc. No. 44, Pl.'s Resp. 2). Plaintiff claims that Parole Agent Alcorn violated his constitutional rights by deciding that he be treated as a "parole violator for being non-compliant in this religious-based rehabilitation program of MDOC . . . ." *Id.*

Parole Agent Alcorn is entitled to absolute immunity. Parole agents enjoy absolute immunity from liability for actions taken in connection with their official duties, such as the

7

preparation of reports, testimony at parole hearings, and parole recommendations. *See Horton v. Martin*, 137 Fed. Appx. 773, 774 (6th Cir. June 7, 2005) (unpublished); *Holland v. O'Hair*, 142 F.3d 446, 1998 WL 152743, *1 (6th Cir. Mar. 26, 1998) (unpublished). By preparing parole violations reports, testifying at Plaintiff's parole violation hearings, and making recommendations, Parole Agent Alcorn was performing his official duties as a parole agent and was attempting to ensure that Plaintiff complied with the conditions of his parole. *See Balas v. Leishman-Donaldson,* No. 91-4073, 1992 WL 217735, *5 (6th Cir. Sept. 9, 1992). It was his recommendation that Plaintiff be charged with a parole violation for failing to complete SAHL that gives rise to Plaintiff's claim against him. Because Parole Agent Alcorn made that recommendation in the course of performing his official duties as a parole agent, this court finds that he is entitled to absolute immunity from Plaintiff's money damages claim against him.

Defendants next argue that Director Caruso is entitled to dismissal of Plaintiff's claims against her in her official capacity, as violative of sovereign immunity. (Doc. No. 38, Defs.' Mot. to Dismiss 6). Defendants also argue that Director Caruso is not a "person" for purposes of 42 U.S.C. § 1983. *Id.*

Plaintiff responds that he seeks prospective relief, which is not barred by the Eleventh Amendment. (Doc. No. 44, Pl.'s Resp. 2). Plaintiff further argues that the director of a state agency is amenable to suit when prospective relief to on-going constitutional violations is sought. *Id.*

Director Caruso is not entitled to dismissal on this ground. Although the Eleventh Amendment bars suits seeking monetary damages against state officials, it does not bar suits seeking injunctive or declaratory relief against state officials for ongoing federal law violations. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n. 10 (1989). Therefore, Plaintiff is not barred from

pursuing his claim for an order directing Defendant Caruso to amend the MDOC policy of requiring parolees to attend substance abuse programs with a religious component.

Defendants also argue that Defendants Hickmon and Patton are entitled to absolute immunity because they presided over Plaintiff's parole violation hearings as hearing examiners. (Doc. No. 38, Defs.' Mot. to Dismiss 7).

Plaintiff responds that Hickmon and Patton are not entitled to immunity because they are not judicial officers but, instead, are the peers of Plaintiff's parole agents Alcorn and Laberdee. (Doc. No. 44, Pl.'s Resp. 2). Plaintiff further argues that judicial immunity does not preclude injunctive or declaratory relief. *Id.* at 3.

On this record, the court cannot determine that Defendants Hickmon and Patton are entitled to absolute immunity. Generally, hearing officers are entitled to immunity from suit for actions they took in the course of performing their duties if they are professional hearing officers who are independent arbiters, i.e. the functional equivalent of a judge. *Shelly v. Johnson*, 849 F.2d 228 (6th Cir.1988) (per curiam); *see also*, *Butz v. Economou*, 438 U.S. 478 (1978). In *Shelly*, 849 F.2d at 230, the hearing officer was found to be functionally comparable to a judge because she was an attorney, employed by the Michigan Department of Corrections, who was vested with the power to conduct formal, adversary proceedings in prison misconduct cases, independent from the prison administration.

Unlike the hearing officer in *Shelly*, it is not apparent from the record that Hickmon and Patton are professional hearing officers who act as independent arbiters. Also, it is not apparent that either Hickmon or Patton are attorneys, although that factor is less relevant to this court than is the independence factor. Neither party identified Hickmon's position with the MDOC but Patton is a

9

supervisor in the Monroe County Adult Probation & Parole Department. (Doc. No. 45, Defs.' Reply Br., Ex. E, Defendant Patton's Responses to Plaintiff's Further Interrogatories and Document Requests, Request No. 13). In addition to Patton's duties as a supervisor, he occasionally conducts preliminary parole violation hearings. *Id.* There is no evidence that Hickmon and Patton are professional hearing officers for MDOC or that they are the functional equivalent of independent judicial officers. In fact, all the evidence points to the contrary. For these reasons, Hickmon and Patton are not entitled to absolute immunity.

With respect to Defendant Gonzales, Defendants argue that he should be dismissed because he was not personally involved in the constitutional violation. (Doc. No. 38, Defs.' Mot. to Dismiss 8). Defendants assert that Gonzales "made a decision concerning Cain based on Defendants Alcorn and Laberdee's recommendations for placement in a substance abuse policy," but Gonzales did not choose the substance abuse program nor did he have direct contact with Cain. *Id.*

Plaintiff argues that Gonzales, as the area manager supervising Alcorn and Laberdee, approved of Alcorn and Laberdee's actions and recommendations and is liable for his decisions based on his supervision. (Doc. No. 44, Pl.'s Resp. 3).

Under 42 U.S.C. § 1983, state officials are personally liable for damages "only for their own unconstitutional behavior." *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir.1989). Accordingly, "even if a plaintiff can prove a violation of his constitutional rights, his § 1983 claim must fail against a supervisory official unless the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Cardinal v. Metrish*, 564 F.3d 794, 802-03 (6th Cir. 2009) (citations and internal quotation marks omitted). Therefore, to succeed on his claim against Gonzales, Plaintiff has to show that Gonzales "at least implicitly authorized,

10

approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *See id.* at 803.

In this case, there is no evidence that Gonzales directly participated in the alleged unconstitutional conduct. Therefore, Gonzales' liability is based on his supervision of Alcorn and Laberdee. In support of his argument that Gonzales approved of Alcorn and Laberdee's unconstitutional conduct, Plaintiff cites a parole violation worksheet in which Alcorn recommended that Plaintiff continue on parole but serve 90 days at the PRC. (Doc. No. 38, Defs.' Mot. to Dismiss, Ex. D, Parole Violation Worksheet and Decision for 11/20/05 violation). Alcorn also stated that plaintiff "continues to be a constant problem wherever he is placed." *Id.* Laberdee approved of Alcorn's recommendation, writing: "Parolee terminated from treatment for non-compliance." *Id.* Gonzales decided to allow Plaintiff to continue on parole and diverted him to the PRC for monitoring. *Id.*

The parole violation worksheet does not indicate, however, that Gonzales was aware of Plaintiff's complaints about the religious nature of the SAHL program or Plaintiff's letter to the newspaper. Plaintiff has not presented any evidence that Gonzales knew that Plaintiff had complained that the religious component of SAHL offended his religious beliefs. Based on the parole violations worksheet, it appears that Gonzales made the decision to continue Plaintiff's parole and place him in the PRC based on Alcorn and Laberdee's reports that Plaintiff was in violation of his parole due to the fact that Plaintiff did not complete treatment. Because there is no evidence that Gonzales was aware of Plaintiff's religious complaints, Gonzales could not have "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Cardinal*, 564 F.3d at 803. Gonzales, therefore, cannot be held liable for his subordinates

allegedly unconstitutional conduct.

Defendants' next argument is that this lawsuit should be dismissed in its entirety because Defendants are entitled to qualified immunity. (Doc. No. 38, Defs.' Mot. to Dismiss 8). Defendants argue that the Defendants involved in Plaintiff's placement in the substance abuse programs did not know that the specific programs had religious components and none of the Defendant were involved in Plaintiff's placement in SAHL, which was handled by an office at the MDOC. *Id.* at 9. Defendants also argue that placing Plaintiff in SAHL and PRC did not violate his constitutional rights because a spot in a secular substance abuse treatment program was found for Plaintiff and Plaintiff refused it. *Id.* at 10. Thus, Defendants attempted to accommodate Plaintiff but were rebuffed. *Id.* at 10.

Plaintiff argues that Defendants are not entitled to qualified immunity because Defendants violated his constitutional rights by mandating his participation in a faith-based rehabilitation program and retaliating against him for writing letters to the newspaper and encouraging other parolees to protest the religious component of the rehabilitation program. (Doc. No. 44, Pl.'s Resp. 4).

Qualified immunity bars civil suits against government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This court analyzes a qualified immunity defense with a two-step test: First, the court determines whether "[t]aken in the light most favorable to the party asserting the injury . . . the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If a constitutional violation is present, the court then asks: "whether the right was

clearly established," applying an objective but fact-specific inquiry. *Id*. at 201-202.

Plaintiff alleges a violation of the Establishment Clause. The test for an Establishment Clause violation was articulated in *Lemon v. Kurtzman*, 403 U.S. 602, 613 (1971), which requires that government acts (1) not have a "secular legislative purpose," (2) not have a "principal or primary effect" which either "advances [or] inhibits religion," and (3) not foster "an excessive government entanglement" with religion. Both the Seventh and the Ninth Circuits have found that a government mandate to attend religious events or programming violates the second prong of the *Lemon* test. *Inouye v. Kemna*, 504 F.3d 705, 712-13 (9th Cir. 2007)(holding that the government coerced religious activity when the plaintiff was required, as a condition of his parole, to attend a religion-based drug treatment program that involved "intensely religious events" and was "fundamentally based on a religious concept of a Higher Power."); *Kerr v. Farrey*, 95 F.3d 472, 478-49 (7th Cir.1996).

As a condition of his parole, Plaintiff was ordered to attend a substance abuse rehabilitation program. Plaintiff was placed in SAHL, which is run by the Salvation Army. It is undisputed that part of the rehabilitation program at SAHL involves a 12-steps program that is based on the religious concept of a Higher Power. Although other courts have found Establishment Clause violations when the government required someone to attend religious events or programming, *see Inouye*, 504 F.3d at 712-13 and *Kerr*, 95 F.3d at 479-79, no such violation occurred here. In this case, when Plaintiff complained about the religious component of SAHL, Defendants found him a secular treatment program placement, which was offered to Plaintiff on two separate occasions. Plaintiff refused to attend the secular treatment program both times it was offered. After each refusal to attend CPI, Plaintiff was found to have violated his parole. Plaintiff's parole violations, therefore, were a direct

result of Plaintiff refusing to participate in a substance abuse program, which was a condition of his parole, even when Defendants worked to accommodate him and his religious objections. On this evidence, the court concludes that Defendants did not coerce Plaintiff into participating in religious programming. Defendants were responsive to Plaintiff's complaints and were successful in accommodating him. However, Plaintiff rebuffed Defendants' efforts. Accordingly, the court hold that because Plaintiff had the option of enrolling in a secular substance abuse rehabilitation program, Defendants did not coerce Plaintiff into attending a religiously based program, and Defendants did not violate the Establishment Clause. For these reasons, Plaintiff cannot establish that a constitutional violation occurred and Defendants are entitled to qualified immunity. Dismissal with prejudice and summary judgment in favor of all of the Defendants should be entered.

Lastly, Defendants argue that Plaintiff's First Amendment and due process claims should be dismissed because Plaintiff has not stated claims upon which relief can be granted. (Doc. No. 38, Defs.' Mot. to Dismiss 10). Defendants argue that Plaintiff cannot show that Defendants caused his injury because he has not put forth any proof that Defendants favored religiously based substance abuse programs over secular substance abuse programs. *Id.* Defendants also argue Plaintiff was offered secular treatment program placements and he was not forced to participate in any of the religious aspects of the substance abuse programs he attended. *Id.* at 11. Defendants further argue that Plaintiff was afforded due process. *Id.* at 11. Plaintiff had preliminary parole violation hearings and availed himself of the parolee grievance procedures. *Id.* at 11. For these reasons, Defendants argue that Plaintiff has failed to state a claim upon which relief may be granted.

Plaintiff responds that he has stated a claim that his First Amendment religious rights were violated because government mandated religiously based substance abuse programs violate the

constitution. (Doc. No. 44, Pl.'s Resp. 4). Plaintiff did not respond to Defendants' argument that has not stated a due process claim.

As discussed above, Plaintiff has not stated a claim for a First Amendment violation because, upon learning of Plaintiff's objections to the religious component of his substance abuse program, Defendants offered Plaintiff a secular placement. Plaintiff refused the secular placement. Ergo, there is no viable First Amendment claim here.

Moreover, Plaintiff has not presented any argument or facts related to his due process claim. In his complaint, Plaintiff alleges that Defendants, with the exception of Director Caruso, conspired to deprive him of his liberty without due process. (Compl. ¶ 30). Yet, Plaintiff did not identify any specific instance when he was deprived of due process, either in the complaint or in response to Defendants' motion to dismiss. Plaintiff also has not adduced any evidence that he was deprived of due process. For these reasons, Plaintiff has failed to state a claim for deprivation of due process and Defendants are entitled to summary judgment and dismissal because Plaintiff failed to create a factual question that his due process rights were violated.

## **IV. Conclusion**

For the foregoing reasons, the court recommends that Defendants' motion to dismiss (Doc. No. 38) be **GRANTED**. In addition, the court recommends that Defendants' subsequent motion for summary judgment (Doc. No. 46) be **DENIED AS MOOT**.

S/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: May 24, 2010

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on May 24, 2010.

                                                 s/J. Johnson
                                                 Case Manager to
                                                 Magistrate Judge Virginia M. Morgan